IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NILKANTH C. TRIVEDI,** *et al.* | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 22-0548 |
| **v.** | : | |
| | : | |
| **DILIP C. CHANDAN,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                      APRIL 11, 2024

# MEMORANDUM OPINION

**INTRODUCTION**

On February 9, 2022, Plaintiffs[1] filed an initial complaint against Defendants[2] asserting various contract and tort claims, and a second amended complaint (the "operative complaint") on August 14, 2023. (ECF 29). In this operative complaint, Plaintiffs specifically assert claims for breach of contract (Count I), breach of quasi-contract (unjust enrichment) (Count II), promissory estoppel (Count III), fraudulent misrepresentation (Count IV), and equitable accounting (Count V). Presently, before the Court is Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), (ECF 31), and Plaintiffs' opposition. (ECF 32). The issues raised in the motion have been fully briefed and are ripe for disposition.[3] For the reasons stated herein, Defendants' motion is granted *in part*.

---

[1]      Nilkanth D. Trivedi ("Plaintiff Trivedi"), Exim Steel & Shipbroking Inc. ("ES&S"), Stainless Distributors Inc. ("SDI"), and Plaintiff Trivedi on behalf of the Estate of Harita Ben (collectively, "Plaintiffs").

[2]      Dilip C. Chandan ("Defendant Chandan"), Chaitanya D. Chandan, Chirag D. Chandan, Vijay C. Chandan (collectively, the "Individual Defendants"), and Chandan Steel Ltd. ("Chandan Steel") and CLS USA, LLC (collectively, the "Corporate Defendants"). The Individual Defendants are citizens of India. Chandan Steel is a foreign company, having its principal place of business in Mumbai, India, and CLS USA, LLC, is a Delaware incorporated limited liability company.

[3]      This Court also considered Defendants' reply, (ECF 33), and Plaintiffs' sur-reply, (ECF 34).

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true the well-pleaded allegations in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The facts relevant to the motion to dismiss are summarized as follows:[4]

> Plaintiff Trivedi began a business relationship with Chandan Steel, an India-based company, in the mid-1990s after meeting Defendant Chandan. Plaintiff Trivedi and Defendant Chandan, on behalf of Chandan Steel, entered into an oral agreement wherein Plaintiff Trivedi would be the exclusive representative, dealer, and distributor for Chandan Steel's stainless-steel products in the United States (the "Exclusive Distribution and Reimbursement Agreement"). In reliance on and in furtherance of the agreement, Plaintiff Trivedi established two US-based companies — ES&S and SDI — to import Chandan Steel's products from India to the United States, and thereafter distribute these products across the country. Pursuant to the agreement, Plaintiffs were to make a 5% commission on the imported goods and, when any issues arose with customer orders, Plaintiffs would address the issues directly with the customer and bill Chandan Steel for reimbursement of the cost of handling the issue. Plaintiffs refer to these reimbursements as "credits." If Chandan Steel did not pay the credit owed within 30 days, Chandan Steel would be charged an additional 18% interest on the credit.
>
> Relying on this business relationship, Plaintiff Trivedi asked his sister, Harita Ben, now deceased, to fund his operations. She agreed and extended a personal loan in the amount of $402,394.50, which Defendant Chandan "acknowledged, approved, and promised to repay" ("Loan Agreement No. 1"). (Second Am. Compl., ECF 29, at ¶ 23). In 2014, pursuant to Defendant Chandan's "request and in reliance of his express authorization and approval, [Plaintiff] Trivedi took out a line of credit for $500,000 from Santander Bank, N.A. for the sole purpose of financing the import and wholesale operation of Chandan Steel in the United States" ("Loan Agreement No. 2"). (*Id.* at ¶ 31).
>
> Sometime in 2018, Defendants began making direct sales of their products to customers in the United States through their subsidiary CLS USA, LLC, in an apparent breach of the Exclusive Distribution and Reimbursement Agreement. Plaintiff Trivedi contacted Defendants about this breach. Defendant Chandan assured Plaintiff Trivedi that he would receive a 2% commission on all future Chandan Steel products distributed in the United States and that Defendants would reimburse Plaintiffs for any outstanding credits Plaintiffs were owed (the "Repayment Promise"). In reassurance, Defendants paid Plaintiff Trivedi $60,000. Plaintiff Trivedi also contacted Defendants Chaitanya Chandan, Chirag Chandan, and Vijay Chandan, who each reassured him that Defendant Chandan would fulfill

---

[4]   These facts are gleaned from the operative complaint. (ECF 29).

his promises.  Plaintiffs allege that Defendants made these promises "to prevent [P]laintiffs from filing a court action to enforce the payment of debt." (*Id.* at ¶ 74).

On February 10, 2020, Defendants made what has become the last of any payments to Plaintiff Trivedi. As of the date of the operative complaint, Defendants have failed to fully pay Plaintiffs for: the reimbursement credits, the commissions on sales, Harita Ben's personal loan, and the Santander bank loan.

**LEGAL STANDARD**

A pleading must contain "a short and plain statement of the grounds for the court's jurisdiction, . . . a short and plain statement of the claim showing that the pleader is entitled to relief[,] and a demand for the relief sought." Fed. R. Civ. P. 8(a). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across

3

the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In their motion to dismiss, Defendants challenge this Court's personal jurisdiction over the Individual Defendants, and the claims against the Corporate Defendants on the basis that Plaintiffs have failed to plead viable claims and/or that these claims are barred by the statute of limitations and the statute of frauds. These arguments will be addressed separately.

*Personal Jurisdiction over the Individual Defendants*

As noted, Defendants move to dismiss all claims asserted against the Individual Defendants for lack of personal jurisdiction. Once a defendant has raised a personal jurisdiction argument, the burden shifts to the plaintiff to present a *prima facie* showing of jurisdiction over the non-resident defendant. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). This requires a plaintiff to show, "with reasonable particularity," enough contact between the defendant and the forum state to support the exercise of personal jurisdiction by the forum court. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant."). "The plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)); *see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, 2015 WL 1312213, at *2 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden

4

to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). In determining whether personal jurisdiction exists over a non-resident, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368.

In a federal court matter, there are two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)). *General jurisdiction* allows a court to exercise jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim results from the party's forum-related activities. *Helicopteros*, 466 U.S. at 415 n.9; *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). *Specific jurisdiction*, on the other hand, allows a court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that forum. *Helicopteros*, 466 U.S. at 414 n.8; *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). In determining whether a court has specific jurisdiction over a nonresident defendant, courts undertake a three-part inquiry. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414. Third, assuming that the first two requirements are met, courts may consider the defendant's contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal quotation marks omitted); *see also O'Connor*, 496 F.3d at 317.

5

Here, Defendants argue that this Court lacks personal jurisdiction over the Individual Defendants and contends that Plaintiffs fail to allege or show any personal contacts between the Individual Defendants and Pennsylvania other than those made by these individuals within the scope of their respective corporate capacity — contacts that Defendants argue are insufficient to give rise to personal jurisdiction over the Individual Defendants. In their response to this challenge, Plaintiffs do not present any affidavits or evidence to support their contention that personal jurisdiction exists. Instead, Plaintiffs argue that personal jurisdiction over the Corporate Defendants and the Corporate Defendants' contacts with Pennsylvania are transposed onto the Individual Defendants once this Court "pierce[s] the corporate veil." (Pls.' Resp., ECF 32-1, at pp. 22-23). Plaintiffs' argument, however, is misguided.

"[I]t is well-settled that, absent allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject officers, directors and shareholders of the corporation to personal jurisdiction." *PSC Pro. Servs. Grp., Inc. v. Am. Digital Sys., Inc.*, 555 F. Supp. 788, 791 n.5 (E.D. Pa. 1983). "When considering whether the corporate veil may be pierced, courts weigh the following factors: undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Mitchell v. CJKant Res. Grp., LLC*, 2021 WL 5980049, at *3 (E.D. Pa. Dec. 17, 2021) (internal quotation marks omitted).

Here, the operative complaint does not assert any facts to support the notion that the Corporate Defendants are sham entities that can be disregarded or any of the other factors that might support piercing the corporate veil. Moreover, when individual defendants act on behalf of a corporate entity, the corporation's meaningful contacts with the forum state do not create personal jurisdiction over the individual defendants if the individuals have had no contacts of their

own. *See Simkins Corp. v. Gourmet Res. Int'l*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985) ("[A] plaintiff seeking to establish personal jurisdiction over an individual corporate officer or director on the basis of tortious conduct committed in the exercise of his corporate duties must prove, by a preponderance of the evidence, that the non-resident officer or director independently has sufficient forum-related contacts."). By essentially relying on the corporate contacts of the Individual Defendants with Pennsylvania, Plaintiffs have failed to show the requisite personal contacts between the Individual Defendants and Pennsylvania so as to give rise to personal jurisdiction over the Individual Defendants. Thus, Plaintiffs have not met their burden of establishing this Court's general jurisdiction over the Individual Defendants.

As for specific jurisdiction, the operative complaint is devoid of facts that allege that the Individual Defendants' conduct occurred within Pennsylvania, that they had minimum contacts with the forum, or that Plaintiffs' claims arise out of any such contacts with Pennsylvania. Thus, similarly, Plaintiffs have not met their burden of establishing this Court's specific jurisdiction over the Individual Defendants.

For the reasons set forth, all claims asserted against Defendants Dilip C. Chandan, Chaitanya D. Chandan, Chirag D. Chandan, and Vijay C. Chandan at Counts III and IV are dismissed for lack of personal jurisdiction.

### *Plaintiffs' Breach of Contract Claims (Count I)*

At Count I of the operative complaint, Plaintiffs assert breach of contract claims against Chandan Steel premised on the Exclusive Distribution and Reimbursement Agreement, and Loan Agreements Nos. 1 and 2. Corporate Defendants move to dismiss Plaintiff's various breach of contract claims.

1. <u>The Exclusive Distribution Agreement</u>

Within Count I, Plaintiffs assert that Defendants breached the Exclusive Distribution Agreement by directly selling to United States customers. Defendants argue that any breach of contract claim based on the Exclusive Distribution Agreement is barred by the statute of limitations and/or the statute of frauds, and that Plaintiffs have failed to plead facts sufficient to meet each of the requisite elements of a breach of contract claim.

Under Pennsylvania law, "[t]he statute of limitations for a breach of contract claim is four years." *Steiner v. Markel*, 968 A.2d 1253, 1255 n.5 (Pa. 2009); 42 Pa. Cons. Stat. § 5525 ("An action upon an express contract not founded upon an instrument in writing" must be "commenced within four years."). The United States Court of Appeals for the Third Circuit (the "Third Circuit") "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Here, with respect to the Exclusive Distribution Agreement, Plaintiffs allege that "sometime in 2018, Chandan Defendants started to bypass the Plaintiffs and conduct direct sales to the U.S. customers through its US subsidiary CLS USA, LLC in breach of the long-standing exclusive representation agreement of the parties." (Second Am. Compl., ECF 29, at ¶ 37). As noted, Plaintiffs filed their original complaint in this action on February 9, 2022. (ECF 1). Therefore, any breach of contract claims that accrued prior to February 9, 2018, would, absent tolling, be barred by the applicable four-year statute of limitations. Although Plaintiffs allege that

8

the breach occurred "sometime in 2018," it is not apparent on the face of the complaint what day or month in 2018 the breach occurred.  As such, at this stage of the litigation, Defendants' statute of limitations defense argument cannot be entertained with respect to the Exclusive Distribution Agreement under Rule 12(b)(6) since this defense is not apparent from the complaint.

Defendants also argue that Plaintiffs' breach of contract claim premised on the alleged breach of the Exclusive Distribution Agreement is barred by Pennsylvania's statute of frauds because the agreement was not in writing.  Under Article 2 of the Uniform Commercial Code (the "UCC"), commonly known as the statute of frauds, as adopted in Pennsylvania, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." 13 Pa. Cons. Stat. § 2201(a).  By its terms, the statute of frauds only applies to contracts for the sale of goods.  "An affirmative defense such as the statute of frauds may be raised on a motion to dismiss under 12(b)(6) only if the defense appears on the face of the complaint."  *Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.*, 2011 WL 773218, at *3 (D.N.J. Feb. 28, 2011) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).

"Whether or not the alleged oral contract is 'a contract for the sale of goods' (and therefore subject to the UCC's Statute of Frauds) is determined according to a two-step analysis.  The first step is to determine whether there is a 'significant service component' to the alleged oral agreement."  *Power Restoration Int'l, Inc. v. PepsiCo, Inc.*, 2015 WL 1208128, at *10 (E.D. Pa. Mar. 17, 2015).  "[I]f there is a significant service component, then the second step of the analysis is to conduct the predominant factor test."  *Id.*  "Courts consider the totality of the circumstances, and their analyses have generally focused on (1) the relative costs of the materials supplied with

the costs of the labor; (2) the compensation structure of the agreement; (3) the language and circumstances surrounding the contract; and (4) the interrelationship of the goods and services to be provided[.]" *Id.* The Third Circuit determines the applicability of the UCC to mixed goods and services contracts by "consider[ing] the purpose or essence of the contract." *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 676 (3d Cir. 1991). If the sale of goods is the predominant purpose of the contract, the UCC's statue of frauds applies. *See id.*

Here, Plaintiffs allege that they not only purchased, imported, and distributed Chandan Steel products to buyers throughout the United States, but also that Plaintiffs performed in-depth market research, developed supply-chain networks, and addressed and resolved customer issues on behalf of Defendants. (Second Am. Compl., ECF 29, at ¶ 32). In light of these allegations that sound in the provision of services, this Court is unable to decide the issue of the applicability of the UCC's statute of frauds at this stage of the litigation. *See KSM Assocs., Inc. v. ACS State Healthcare, LLC*, 2006 WL 847786, at *5 (E.D. Pa. Mar. 30, 2006) (declining to decide "[i]n the absence of a complete factual record" if the alleged contract was "solely a services contract, a mixed goods and services contract predominately for services, or a mixed contract predominately for goods").

Defendants also argue that Plaintiffs have not pled sufficient facts to assert a claim for breach of the Exclusive Distribution Agreement. "Under Pennsylvania law, 'three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[ ] (3) resultant damages.'" *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). "To satisfy the first element—the existence of a contract itself—a party must plead enough facts to demonstrate '(1)


whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.'" *Abdul-Rahman v. Chase Home Fin. Co., LLC*, 2014 WL 3408564, at *2 (E.D. Pa. July 11, 2014) (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir.1998)). "Whether the terms are sufficiently definite is a question of law." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009). "An agreement is sufficiently definite and will not fail for vagueness if the parties intended to make a contract and the terms provide a reasonably certain basis for a court to give an appropriate remedy." *Dahar v. Grzandziel*, 599 A.2d 217, 220 (Pa. Super. Ct. 1991).

In the operative complaint, with regard to the Exclusive Distribution and Reimbursement Agreement, Plaintiffs assert, *inter alia*, that: Defendant Chandan asked Plaintiff Trivedi to become the exclusive representative and dealer for the marketing, distribution, and whole sale of Chandan Steel's stainless steel products in the United States; Plaintiffs would pay for Chandan Steel products that were made for distribution and sale in the United States; Plaintiffs would take delivery at the ports as Chandan Steel's consignee and transport and deliver the products to customers; Plaintiffs would make a 5% commission on these sales; Plaintiffs would handle customer issues and disputes, and request reimbursements from Defendants for the associated costs; and Defendants would pay Plaintiffs the reimbursements of the credits within 30 days or owe an additional 18% interest on the credit amount due. (Second Am. Compl., ECF 30, at ¶¶ 19, 25, 26, 29, 30). As asserted, the contract was made between Plaintiff Trivedi and Defendant Chandan, on behalf of Chandan Steel. As such, this Court finds that the essential terms of the Exclusive Distribution and Reimbursement Agreement have been pled with sufficient definiteness.

Defendants also argue that because the Exclusive Distribution Agreement was not for a set term, it was an at-will contract. Defendants argue that in light of the at-will nature of the contract, their alleged actions in selling product directly to customers (bypassing Plaintiffs) do not constitute a breach of contract, but rather a termination of the at-will agreement. To support this argument, Defendants rely on *D&M Sales, Inc. v. Lorillard Tobacco Co.*, wherein a district court found that the defendants therein properly terminated a supplier-distributor written agreement that had an indefinite duration by sending a fax terminating the agreement without explanation. 2010 WL 786550, at *2, *4 (E.D. Pa. Mar. 8, 2010). While the agreements at issue in both *D&M* and this case were supplier-distributor agreements with indefinite durations, the similarities between the two cases end there. Here, unlike in *D&M*, Defendants did not notify Plaintiffs of any "termination" of the agreement. Rather, Defendants commenced direct sales to United States customers. Indeed, even after Plaintiffs discovered the breach of the agreement, Defendants did not terminate the agreement but rather renegotiated the commission agreement. Defendants do not cite to, and this Court is unaware of, any case law that suggests an at-will contract can be effectively terminated by a party's selective breach of the agreement whenever the terminating/breaching party desires without the breaching party being liable for its breach. Under these circumstance, Defendants' motion to dismiss Plaintiffs' breach of contract claim based on the Exclusive Distribution Agreement is denied.

2. The Reimbursement Agreement

Plaintiffs also assert a breach of contract claim premised on the reimbursement provision of the Exclusive Distribution and Reimbursement Agreement. As noted, pursuant to the Reimbursement Agreement, Plaintiffs would handle customer issues on behalf of Chandan Steel, and in exchange, Chandan Steel would reimburse Plaintiffs for any related costs, called credits.

Further, in the event Chandan Steel failed to reimburse Plaintiffs within 30 days, Chandan Steel would pay Plaintiffs an additional 18% interest on the credit owed. Defendants argue that any claims based on the Reimbursement Agreement are barred by the four-year statute of limitations because the last breach of the Reimbursement Agreement occurred more than six years before this civil action was filed.

"In a contract case, the cause of action accrues when there is an existing right to sue based on the breach of contract." *Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env't Infrastructure Inc.*, 439 F. Supp. 3d 407, 432 (E.D. Pa. 2020) (citing *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002)). At Exhibit 1 of the operative complaint, Plaintiffs attached their accounting log that "detail[ed] all the problematic orders or product issues, identified by each order number known as 'credit #', and the associated purchase order date and customer/client name, together with a corresponding description of issue in the memo section and the monetary amount, called 'credit', Plaintiffs incurred to address or resolve the issue for Chandan Steel."[5] (Second Am. Compl., ECF 20, at ¶ 29). The last entry in the log for a credit is dated December 11, 2015. Under the terms of the Reimbursement Agreement, Defendants owed payment on that final credit by January 10, 2016. As such, as alleged by Plaintiffs, Defendants' final breach of the Reimbursement Agreement occurred on January 10, 2016, when Defendants failed to pay the credit. Thus, Plaintiffs' cause of action for any breach of the Reimbursement Agreement accrued, at the latest, on January 10, 2016, and the statute of limitations on any claim for breach of the Reimbursement Agreement expired on January 10, 2020. *See* 42 Pa. Cons. Stat. § 5525. Because Plaintiffs did not file their original

---

[5] Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

complaint until February 9, 2022, Plaintiffs' claims premised on the Reimbursement Agreement are barred by the statute of limitations.

Plaintiffs argue, however, that the last payment they received from Defendants was on February 10, 2020, and that this is the date on which the action accrued. Plaintiffs, however, are misguided. As alleged, the last credit repayment was due on January 10, 2016. The fact that Defendants made payments to Plaintiffs at a later date, does not change the accrual date from the date of the breach of the contract, here, January 10, 2016.

Nonetheless, Plaintiffs also argue that the statute of limitations should be equitably tolled due to Defendants' "fraudulent misrepresentations" that they would repay Plaintiffs the reimbursements and commissions earned. This argument is misplaced. "Equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 110 (3d Cir. 2009) (quoting *Miller v. N.J. Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998)). Equitable tolling is appropriate only in the following limited circumstances:

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Glover v. F.D.I.C.*, 698 F.3d 139, 151 (3d Cir. 2012). "The first situation under which equitable tolling is appropriate requires the plaintiff to have been ***misled about the availability of a cause of action***." *Getchey v. Cnty. of Northumberland*, 120 F. App'x 895, 899 (3d Cir. 2005) (emphasis added).

Here, Plaintiffs assert that Defendants misled them "with the intent to induce the plaintiffs to rely on these fraudulent misrepresentations so as to prevent the plaintiffs from filing a court

14

action to enforce the payment of debt." (Second Am. Compl., ECF 29, at ¶ 74). Taking Plaintiffs' assertions as true, as the Court must at this stage of the litigation, Defendants fraudulently reassured Plaintiffs that they would receive payment for money due, thus, convincing Plaintiffs not to file an action. However, Defendants' reassurances that they would provide payment did not and could not have misled Plaintiffs about the *availability* of a cause of action. Per the terms of the Reimbursement Agreement, Plaintiffs were aware or should have been aware of the accrual of their cause of action thirty days after each credit reimbursement was due and for which no payment had been received from Defendants. Further, Defendants' promise to "make good" on the owed payments did not change Plaintiffs' knowledge of the existence of a breach of contract or the availability of a cause of action. As such, Plaintiffs' equitable tolling argument is unpersuasive. Defendants' motion to dismiss claims based on a breach of the Reimbursement Agreement is granted.

    3.   The Loan Agreements

In the operative complaint, Plaintiffs allege that Defendants breached the Loan Agreements, *i.e.*, the promises to repay Harita Ben's personal loan and Plaintiff Trivedi's Santander loan. In their motion, Defendants argue that Plaintiffs have not alleged facts sufficient to support a breach of contract claim based on either Loan Agreement and have not plead the essential terms of the underlying contracts with sufficient definiteness.

As noted, "[u]nder Pennsylvania law, '[a] breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013) (citing *Braun v. Wal–Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa.Super.Ct.2011)). To plead the existence of a contract, a party must plead enough facts to demonstrate "(1) whether both parties manifested an intention to be bound by the

agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS*, 155 F.3d at 666.  When pleading the existence of a contract, a plaintiff must plead the contract's "essential terms." *Univ. of Scis.*, 961 F.3d at 211. Here, Plaintiffs' allegations with respect to Loan Agreement No. 1 are that "[i]n reliance of D. Chandan's representations, Trivedi asked his [] sister . . . to fund the US operations of Chandan Steel by extending a personal loan of $402,394.50, the sum of which Defendant D. Chandan acknowledges, approved, and promised to repay." (Second Am. Compl., ECF 29, at ¶ 23).  As for Loan Agreement No. 2, Plaintiffs allege only that "[i]n and around 2014, pursuant to D. Chandan's request and in reliance of his express authorization and approval, Trivedi took out a line of credit for $500,000.00 from Santander Bank, N.A. for the sole purpose of financing the import and wholesale operation of Chandan Steel in the United States." (*Id.* at ¶ 31).  Apart from the purported existence of the loans and their amounts, the operative complaint contains no other essential terms, particularly the terms of repayment.  Without the essential terms of repayment, neither this Court nor a factfinder can determine the essential elements of the contracts alleged between Plaintiffs and Defendants, or whether Defendants breached the alleged contracts.  As such, Plaintiffs have not met their pleading burden with respect to the breach of Loan Agreements Nos. 1 and 2. Accordingly, Plaintiffs' breach of contract claims premised on Loan Agreements Nos. 1 and 2 are dismissed.

### *Plaintiffs' Unjust Enrichment Claim (Count II)*

At Count II of the operative complaint, Plaintiffs assert a breach of quasi-contract claim — the unjust enrichment claim — against Corporate Defendants premised on Defendants' Repayment Promise.  As noted, Defendant Chandan promised to pay Plaintiff Trivedi 2% commission on all direct sales, and the amount of commissions and reimbursements owed.  Defendants move to

dismiss this unjust enrichment claim, arguing that: (1) an unjust enrichment claim is precluded by the existence of a contract; and (2) Plaintiffs have not plead facts sufficient to support an unjust enrichment claim because Defendants were not conferred a benefit from the agreement and Plaintiffs rendered the services for their own benefit.

At this stage of the litigation, Defendants' argument that the unjust enrichment claim is precluded by the existence of a contract is misplaced. In the operative complaint, Plaintiffs do not allege the existence of a contract with respect to the Repayment Promise or assert a breach of contract claim based on the Repayment Promise. As such, Plaintiffs' unjust enrichment claim is not barred by the existence of a contract. Moreover, it is well-settled that a plaintiff can plead claims in the alternative, and courts frequently allow even related contract and quasi-contract claims to proceed past the motion to dismiss stage. *See Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (A plaintiff may "plead unjust enrichment in the alternative in certain circumstances, even where the existence of a contract would preclude recovery for unjust enrichment. Such circumstances require either that (i) the contract at issue covers only a part of the relationship between the parties, or that (ii) the existence of a contract is uncertain or its validity is disputed by the parties." (internal citations and quotation mark omitted)).

Defendants' argument that Plaintiffs have not pled the requisite benefit received by Defendants is also without merit. "To recover under the equitable doctrine of unjust enrichment (otherwise known as 'quasi-contract') a plaintiff must establish the following: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit(s) by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Downey v. First Indem.*

*Ins.*, 214 F. Supp. 3d 414, 430 (E.D. Pa. 2016).  Here, it is clear from a fair reading of the operative complaint that Defendants agreed to pay Plaintiffs for overdue credits as well as a 2% commission on Defendants' direct imports in order to either cure or avoid litigation over Defendants' past breaches.  As such, Plaintiffs have alleged a benefit conferred on the Corporate Defendants by Plaintiffs.

Citing to *King of Prussia Equipment Corp. v. Power Curbers, Inc.*, Defendants also argue that a plaintiff cannot assert an unjust enrichment claim when it rendered services to advance its own benefit.  117 F. App'x 173, 176 (3d Cir. 2004) ("[U]njust enrichment will not be found where Plaintiff rendered services to advance its own interests.").  Here, however, Plaintiffs' unjust enrichment claim is based on Defendants' Repayment Promise.  After Plaintiffs confronted Defendants for breaching the Exclusive Distribution agreement, Defendants promised to pay Plaintiffs for owed commissions and credits, and 2% commissions on future direct sales.  This promise was not made in exchange for any services rendered by Plaintiffs.  As such, Defendants' reliance on *King of Prussia* is misplaced and their advancement of own interest argument is without merit.  As such, Plaintiffs have pled facts sufficient to assert an unjust enrichment claim.  Accordingly, Defendants' motion to dismiss Count II is denied.

### *Plaintiffs' Promissory Estoppel Claim (Count III)*

At Count III of the operative complaint, Plaintiffs assert a promissory estoppel claim against all Defendants premised on the Repayment Promise.  As noted, this Court lacks personal jurisdiction over the Individual Defendants, thus this claim is dismissed with respect to the Individual Defendants. With respect to the remaining defendants, the Corporate Defendants move to dismiss Plaintiffs' promissory estoppel claim arguing that Plaintiffs' allegations fail to meet each of the elements of promissory estoppel.  Under Pennsylvania law, "[i]n order to maintain an

action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000).

Here, Plaintiffs assert that in 2018, after a breach of the Exclusive Distribution and Reimbursement Agreement occurred, Defendants promised to pay Plaintiffs a 2% commission on Defendant Chandan Steel's direct sales to customers and pay Plaintiffs' outstanding credits. Relying on the promise of reimbursement, Plaintiffs refrained from asserting their legal rights with respect to Defendants' various breaches. Plaintiffs allege that because they are owed nearly two million dollars when accounting for the credits, commissions, and loan repayments owed, and are no longer the exclusive distributors, their business has lost all financial viability. As alleged, Plaintiffs have pled facts sufficiently to assert a plausible claim for promissory estoppel. As such, Defendants' motion to dismiss Count III is denied with respect to the Corporate Defendants.

### *Plaintiffs' Equitable Accounting Claim (Count V)*

In their motion, Defendants do not specifically move to dismiss Plaintiffs' equitable accounting claim. Defendants merely argue in their reply that "[s]ince all of Plaintiffs' other causes of action fail, so too must its cause of action for an equitable accounting." (Defs.' Reply, ECF 33, at p. 17). For the reasons set forth above, several of Plaintiffs' claims survive Defendants' underlying motion to dismiss. Accordingly, Defendants' motion to dismiss Count V is denied.

**CONCLUSION**

For the reasons set forth, Defendants' motion to dismiss all of the claims asserted against the Individual Defendants is granted, as this Court lacks personal jurisdiction over them. With

respect to Plaintiffs' claims against the Corporate Defendants, the motion to dismiss is denied with respect to the breach of contract claim contained within Count I premised on the Exclusive Distribution Agreement, unjust enrichment at Count II, promissory estoppel at Count III, and equitable accounting at Count V.  The motion is granted with respect to the breach of contract claims at Count I premised on the Reimbursement Agreement and Loan Agreements Nos. 1 and 2.  An Order consistent with this Memorandum Opinion follows.

 NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.